ON APPLICATION FOR REHEARING
The Court's original opinion is withdrawn and the following opinion is substituted therefor.
This is a condemnation case. The State of Alabama filed a complaint for condemnation of a parcel of land owned by Ottis and Gladys Cockrell. The probate court determined the value of the property to be $85,120. The Cockrells appealed to the circuit court, where a jury returned a verdict setting the value at $135,110. The trial court *Page 1283 
entered judgment on the verdict and the State appeals.
The State contends that the trial court erred in allowing testimony concerning the sale of a parcel of property adjacent to the parcel at issue and in subsequently refusing to allow the negotiator for the purchaser in that transaction to testify concerning facts that allegedly had an effect on the price of that property.
Approximately three months prior to the subject condemnation, the Tuscaloosa County Industrial Development Foundation ("the Foundation") purchased a large tract of land adjacent to the Cockrells' property from the Jordan family for $15,000 per acre and then sold it on the same day to the JVC Corporation for $7,500 per acre. The State maintains that the sale from the Jordan family to the Foundation was not an arm's-length transaction and should not have been considered in the valuation of the Cockrells' property. Alternatively, the State argues that the trial court erred in refusing to allow Don Hayes, who negotiated the purchase for the Foundation, to testify concerning the facts and circumstances surrounding the sale.
Ala. Code 1975, § 18-1A-196, states:
 "As a basis for an opinion as to value, a valuation witness qualified under subsection (a) of section 18-1A-192 may consider, inter alia:
"(1) . . . .
 "(2) The price and other terms and circumstances of any good faith sale of comparable property. A sale is comparable within the meaning of this section only if it was made within a reasonable time before or after the valuation date and the property is sufficiently similar in the relevant market, with respect to situation, location, size, usability, improvements, and other characteristics, to warrant a reasonable belief that it is comparable to the property being valued. Any proposed comparable sale that fails to meet the foregoing standards shall not be admissible."
Clearly, the sale of the Jordan property meets the requirements of time and similarity in location, size, usability, and improvements. The only issue is whether it was a good faith sale. The State argues that it was not a good faith sale, but that it was a forced sale because the Foundation was faced with the prospect of JVC's building its plant elsewhere unless the Foundation could purchase the property from the Jordans. The court admitted evidence that the Foundation and the Jordan family conducted negotiations concerning the sale price of the property; that the Jordans originally asked $25,000 per acre and the Foundation originally offered $7500 per acre; and that the Foundation bought the land for $15,000 per acre and immediately sold it to JVC for $7500 per acre. Furthermore, there was testimony that the transaction was one between a willing seller and a willing buyer.
In State v. Hartley, 519 So.2d 924 (Ala. 1988), the issue was whether the trial court erred in disallowing evidence of a public sale of comparable property pursuant to a mortgage foreclosure on the ground that it was not a good faith sale of comparable property. This Court held that the trial court did err in that ruling. We also expressed the opinion that Hartley's evidence of the emotionally charged atmosphere would be admissible for the jury's consideration of the circumstances of the sale. In reaching that decision we noted:
 "Our holding is reinforced by the commentary in § 18-1A-196:
 " 'Previous sales data may be used as the basis of opinion testimony under subdivision (1) only if the transaction was made in good faith. The requirement of "good faith" is believed to be a sufficient safeguard against efforts to manipulate the sales price. The weight to be given the data, of course, will depend upon whether the particular transaction was fully voluntary, not too remote in time, and was made at a price and under circumstances which make it a useful criterion of market value on the valuation date. . . . In cases of doubt as to whether factors of this kind (e.g. remoteness, voluntariness, relevancy to value on valuation date) raise questions of admissibility *Page 1284 of the evidence, this subsection takes the position that these factors or elements go to the weight of the evidence and persuasiveness of the data, rather than to admissibility.
" '. . . .
 " '. . . It is intended that broad latitude in admissibility should be given in applying this subsection, since it is believed that errors of admission are less likely to be prejudicial to the interest of justice than errors of exclusion.' "
519 So.2d at 925-26 (emphasis in Hartley).
Thus, Hartley shows that evidence of the sale was admissible, and that any evidence tending to show involuntariness would go to "the weight of the evidence and persuasiveness of the data, rather than to admissibility." Cf. Knabe v. State, 285 Ala. 321, 231 So.2d 887 (1970) (in which it was held that a sale by a public housing authority would not be admissible because the sale included restrictions on the purchaser's use of the property and so could not be considered a free market sale).
The State argues that the trial court erred in excluding testimony of its witness Don Hayes, who had negotiated the purchase of the Jordan property for the Foundation. The following exchange forms the basis of this argument:
 "Q. Did the IDA in fact purchase the Jordan Estate?
 "A. In conjunction with the Industrial Development Foundation, yes.
"Q. Why did you purchase it?
"MR. GRAY: Object, if it please the Court.
"THE COURT: As to form?
"MR. GRAY: Yes, sir.
"THE COURT: Sustained.
"MR. HALL (resumed):
 "Q. Do you have any opinion as to why the IDA purchased that site?
"MR. GRAY: Objection, if it please the Court.
"THE COURT: Read it back, please.
 "MR. HALL: I said, 'Do you have any opinion as [to] why the IDA purchased that site?'
"THE COURT: Sustained.
"MR. HALL (resumed):
 "Q. Do you know of the purchase of any tracts by the IDA in the immediate vicinity of where the JVC Plant is now?
"MR. GRAY: Your Honor, please, again I object.
"THE COURT: I'll sustain.
 "MR. HALL: Your Honor, I'm trying to show as —
(interrupted)
 "MR. GRAY: Your Honor, if he is going to explain, I request that we do that outside the presence of the jury."
In its offer of proof, the State said that Hayes would testify that the JVC site selection team indicated that JVC would take no site in Tuscaloosa County except the Jordan property; that the Foundation purchased the property for substantially more than it received when selling the property to JVC; that the main purpose of the Foundation was to provide jobs and economic opportunity for the people in the Tuscaloosa area; and that the Foundation's "main objective was to get the JVC plant in Tuscaloosa County and that they were going to get it there any way that they could." All of these points were introduced in evidence, except possibly the first.
Even the first point was admitted in substance, however; Hayes testified that, of the three sites that the Foundation showed to JVC, JVC chose the Jordan estate. Much of the State's evidence centered around the alleged "forced" nature of the Foundation's purchase of the Jordan estate. For example, its appraiser, Dick Holly, testified that he did not consider that sale as a comparable one because he felt that it occurred under duress.
Rulings as to admissibility of evidence rest largely within the discretion of the trial court and will not be disturbed on appeal in the absence of an abuse of discretion.Russellville Flower Craft v. Searcy, 452 So.2d 478 (Ala. 1984). Even to the extent that Hayes's offered statement that JVC would not buy any other property in Tuscaloosa County might have been admissible, in substance and effect that testimony *Page 1285 
was already in evidence, and any error in excluding that testimony would have been harmless. Rule 45, A.R.App.P.
The State also argues that the judgment includes interest that should not have been awarded to the Cockrells. In its charge to the jury, the trial court stated:
 "When you have determined the amount of compensation to which the landowners here are entitled . . ., you should compute interest at the rate of twelve percent per annum for the sum of such compensation from the time of the taking in this case, and again that would be June the 13th of 1986. You would add that to the amount that you determine, to arrive at one sum as just compensation."
The State contends that, because it deposited $85,120 with the probate court when that court reached its determination of value, the Cockrells are not entitled to recover interest on that amount for the period after the date of deposit. Thus, argues the State, the court should not have allowed the jury to compute interest on that amount for that period. This argument is supported by Ala. Code 1975, § 18-1A-211(b), which states that "Except as provided by section 18-1A-111 the judgment may not include any interest upon the amount represented by funds deposited into probate court by the plaintiff for the period after the date of deposit." Section 18-1A-111 provides for the allocation of interest earned on funds deposited.
The judgment is therefore due to be reduced by the amount of 12% interest on $85,120 from the date of deposit to the date of the verdict, and then to be increased by the amount of interest actually earned on the deposit. See State v. McGee,543 So.2d 669 (Ala. 1989).[1]
Upon due return to this Court indicating that this action has been taken, the judgment, as modified by that action, will be affirmed.
On rehearing, the Cockrells point out that there is no evidence that the State deposited any money with the probate court. This would be a matter of record in the probate court. If it is properly established on remand that the money was deposited, the circuit court should calculate the amount of the judgment in accordance with this opinion. If the money was not deposited, the circuit court should enter judgment on the verdict.
APPLICATION GRANTED; ORIGINAL OPINION WITHDRAWN; OPINION SUBSTITUTED; AND REMANDED WITH INSTRUCTIONS.
HORNSBY, C.J., and MADDOX, ADAMS and STEAGALL, JJ., concur.
[1] Because of the provisions of § 18-1A-211(b), we suggest that a jury should not be instructed to award interest in a case where funds have been deposited in probate court. For the jury to award interest correctly, such a case would require evidence from the probate clerk as to the amount and date of the deposit and the amount of interest accrued thereon, and the jury would have to make the necessary calculations. This might introduce needless confusion into the jury's deliberations. Therefore, the jury could be instructed to award the value of the property without adding interest, and the trial court could compute the interest and enter judgment accordingly.